IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **LARRY J. DAVIS,** | ] |
| **Plaintiff,** | ] |
| v. | ] |
| | ] Case No.: 2:13-cv-2069-KOB |
| **HOUSING AUTHORITY OF THE BIRMINGHAM DISTRICT,** | ] |
| **Defendant.** | ] |

## MEMORANDUM OPINION

This matter comes before the court on Defendant Housing Authority of the Birmingham District's ("HABD") "Motion for Summary Judgment," (Doc. 16), and HABD's "Motion to Strike," (Doc. 27).

This case is a straight forward age discrimination case. Plaintiff Larry J. Davis claims HABD discriminated against Davis because of his age when they failed to promote Davis to the permanent position of Director of Leased Housing/Section 8. However, HABD, through its decision-maker Naomi Truman, chose a different candidate, Sterling Bethea, because Bethea had superior credentials and because Davis caused major problems while serving as the interim Director of Leased Housing/Section 8. For the reasons stated below, HABD wins.

Before addressing HABD's summary judgment motion, however, the court must rule on HABD's motion to strike to determine the record before it for summary judgment.

I.   **Motion to Strike**

HABD asks the court to strike (1) an *Atlanta Unfiltered* newspaper article attached as

Exhibit C to Davis's response to HABD's summary judgment motion; and (2) Davis's response to some of HABD's summary judgment facts.

Whether to grant a motion to strike is an evidentiary ruling within the discretion of the district court. *See United States v. Stout*, 667 F.2d 1347, 1353 (11th Cir. 1982) ("A trial court's ruling as to the materiality, relevancy or competency of testimony or exhibits will ordinarily not warrant reversal unless constituting an abuse of discretion, fraught with reasonable likelihood of prejudice to defendant." (internal citations omitted)). The court declines to strike any of Davis's evidence.

### A. The *Atlanta Unfiltered* Newspaper Article

In his response to HABD's motion for summary judgment, Davis cites an *Atlanta Unfiltered* newspaper article to establish the circumstances surrounding Bethea's resignation from the Dekalb County Housing Authority in Atlanta, Georgia. Davis alleges that the article shows that Bethea resigned during an "ongoing" federal investigation into the misuse of funds. (Doc. 24, 17). In contrast, Bethea said in his deposition that he resigned "after the investigation." (Doc. 25-2, 10).

HABD argues that the article is not admissible because the article is hearsay, is not authenticated, lacks foundation, and is irrelevant.

#### 1. Hearsay

The article is hearsay, but is admissible as impeachment evidence. Generally, inadmissible hearsay cannot be considered on a motion for summary judgment. *See Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). However, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement *could* be reduced to

2

admissible evidence at trial." *Id.* at 1323 (internal quotations omitted and emphasis added). "For example, the statement might be admissible because it falls within an exception to the hearsay rule, or does not constitute hearsay at all (because it is not offered to prove the truth of the matter asserted), or is used solely for impeachment purposes (and not as substantive evidence)." *Id*. at 1323-24.

Davis's response to HABD's motion for summary judgment only cites the article once, in footnote six, to impeach Bethea's deposition testimony. Although Davis suggests in his response to HABD's motion to strike that the article is relevant for other reasons, including to show Bethea's qualifications, (Doc. 28, ¶ 5), and need for Truman to inquire more deeply into Bethea's candidacy, (Doc. ¶ 6), Davis does not present these arguments in his response to the summary judgment motion.

Thus, the court will not strike the article because Davis uses the article solely for impeachment purposes. However, the court notes that questions of credibility are not within the court's province.

      **2.**    **Authentication and Foundation**

The article is not yet authenticated, but authentication is not required at the summary judgment stage. The article is from an online news outlet and is analogous to a traditional newspaper article. Thus, the article could be found self-authenticating at trial pursuant to Federal Rule of Evidence 902(6). Further, news articles may be considered on summary judgment even if the news articles could not be reduced to admissible form at trial. *See Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater*, 2 F.3d 1514, 1530 (11th Cir. 1993) (finding news articles may be considered on summary judgment even if inadmissible at trial).

HABD's objection to the article because it lacks "foundation" is puzzling. Authentication is the method used to lay a foundation to admit documentary evidence. Fed. R. Evid. 901. As discussed above, the article may be considered at summary judgment because it may be self-authenticating at trial. Further, to the extent HABD argues that the article should be stricken as "conclusory, speculative, and/or opinion evidence," those critiques go to the weight of the evidence rather than admissibility and are not sufficient justifications to strike the article.

Thus, the court will not strike the article because it is not authenticated or lacks foundation.

### 3. Relevance

Finally, the article is clearly relevant to Bethea's credibility. The article has a tendency to make the facts in Bethea's testimony more or less probable than they would be without the article. Thus, the article is relevant.

### B. Davis's Response to HABD's Relevant Undisputed Facts

HABD also asks the court to strike Davis's response to certain facts in HABD's motion for summary judgment. First, HABD argues that Davis failed to provide specific evidentiary citations to paragraphs 19.b, 19.c, and 20.b. However, Davis's responses refer either to earlier evidentiary citations or to his complaint. The court find that Davis substantially complied with the court's requirement for specific evidentiary citations.

Second, HABD argues that Davis's responses to paragraphs 12, 15.b., 18.c, and 19 are irrelevant argument. The court finds that these responses contain factual averments. Further, the court need not strike any argument in Davis's responses to determine the merits of the summary judgment motion.

  C. **Summary**

In summary, the court **DENIES** HABD's motion to strike (1) the *Atlanta Unfiltered* newspaper article attached as exhibit C to Davis's response to HABD's summary judgment motion; and (2) Davis's response to some of HABD's summary judgment facts.

  II. **Motion for Summary Judgment**

  A. **Facts**

  1. **HABD Policies**

HABD is a public entity that administers low and moderate income public and Section 8 housing programs in Alabama. HABD has a Human Resources Policy Manual with a policy against age discrimination. Davis received a copy of the policy manual.

HABD temporarily reassigns its employees in the event of vacancies. Employees assigned to temporary positions do not lose their original position and return to their original position when the reassignment ends. Employees do not receive evaluations during their reassignments. Performance issues in the temporary position are a reason to end the reassignment.

Naomi Truman, a 68-year-old female, is HABD's Executive Director. HABD assigned Truman to work as the interim Executive Director in October 2008. Truman became the permanent Executive Director in February 2009.

  2. **Davis's Early Employment with HABD**

Plaintiff Larry Davis, a 64-year-old male, joined HABD as a temporary Resident Selection Specialist in 2003. HABD hired Davis when he was around age 51. Before working with HABD, Davis had no prior experience working with a housing authority.

In August 2003, HABD awarded Davis a permanent position as a File Review Specialist.

HABD temporarily moved Davis to the position of Resident Selection Specialist from August 2003 to January 2005. HABD again temporarily moved Davis to the position of Leased Housing Manager from January 2005 to February 2005 while the permanent Leased Housing Manager went on medical leave. From February 2005 to October 2005, Davis returned to his temporary position as Resident Selection Specialist.

In October 2005, HABD awarded Davis a permanent position as a Resident Selection Specialist. HABD temporarily moved Davis to the position of Assistant Leased Housing Manager/Section 8 from April 2006 to September 2006 because the permanent Assistant Leased Housing Manager retired.

In September 2006, HABD awarded Davis a permanent position as Assistant Leased Housing Manager/Section 8.

### 3. Davis as the Interim Director of Leased Housing/Section 8

HABD temporarily moved Davis to the position of Director of Leased Housing/Section 8 from November 2007 to August 2010. Davis never received an evaluation from Truman while assigned as the interim Director of Leased Housing/Section 8.

During Davis's time as interim Director of Leased Housing/Section 8, HABD received a Section 8 Management Assessment Program ("SEMAP") score of zero on three performance indicators. SEMAP is the mechanism that HUD uses to review public housing program performance. In 2008, HABD received a zero from HUD for both the "Selection from Waiting List" and "HQS Enforcement" indicators. In 2010, HABD received a zero on the "Determination of Adjusted Income" indicator. HABD received an overall standard score on its SEMAP each year, however.

Further, during Davis's time as interim Director of Leased Housing/Section 8, HABD received several employee complaints about management. In February 2009, an employee claimed Davis showed favoritism in selecting staff for temporary assignments. In April 2010, a group of employees claimed mistreatment by management and alleged a hostile work environment. Davis did not know about these complaints.

4. **Davis as the Temporary Associate Director of Leased Housing/Section 8**

To mitigate these problems, Truman decided to split the responsibilities of the Director of Leased Housing/Section 8 position into two temporary positions, outside of the normal HABD job classifications, called Associate Directors of Leased Housing/Section 8.

In August 2010, HABD temporarily moved Davis to one of the Associate Director of Leased Housing positions. Davis remained in this position until June 2012. HABD temporarily placed Jacqueline Johnson, a 60-year-old female, into the other Associate Director of Leased Housing position. In 2011, HABD did not receive any zeros in its SEMAP score, received a high HUD performance rating, and received fewer employee complaints. Davis never received an evaluation from Truman while temporarily assigned as the Associate Director of Leased Housing/Section 8.

In July 2011, HABD reassigned Johnson to Public Housing and removed her Associate Director of Leased Housing position from the budget. In July 2012, HABD removed the Associate Director of Leased Housing position filled by Davis from the budget and temporarily moved Davis to the position of Leased Housing Manager/Lease Housing. No one replaced Johnson or Davis as Associate Directors of Leased Housing.

In September 2012, HABD awarded Davis a permanent position as a Leased Housing

Manager. Davis continues to work as HABD's Leased Housing Manager.

### 5.     Hiring the Permanent Director of Leased Housing/Section 8

Between 2011 and 2012, HABD permanently filled the Director of Leased Housing/Section 8 position. In February 2011, HABD advertised for and began accepting applications for the permanent Director of Leased Housing/Section 8 position. The position did not require prior executive experience. Davis applied for the position. Six applicants met the minimum qualifications for the position. However, two candidates failed to complete a required exercise and one candidate failed a background check. Truman chose to interview the other three candidates: Davis, Tammy Sawyers, and Sterling Bethea. After the first interview, Bethea received an application rating of 40, Davis received a 40, and Sawyers received a 30. Thus, Bethea and Davis proceeded to the second round of interviews.

In September 2011, HABD hired Bethea as the interim Director of Leased Housing/Section 8 because Truman believed that Bethea's experience running entire housing authorities, including the Dekalb County Housing Authority, as Executive Director without major problems was superior to Davis's experience as interim Director of Leased Housing/Section 8 at HABD, which included SEMAP scores of zero and employee complaints. The program experienced no "major" problems during Bethea's tenure as interim Director of Leased Housing/Section 8. (Doc. 18-3, 15). Truman regularly discussed Bethea's job performance with Bethea while he served as interim Director of Leased Housing/Section 8.

In September 2012, HABD awarded Bethea a permanent position as Director of Leased Housing/Section 8 based on his experience prior to joining HABD and his work while interim Director of Leased Housing/Section 8. Bethea was 48 in September 2012 while Davis was 60.

Bethea, while the Executive Director of the Dekalb County Housing Authority, initiated a federal investigation into the misuse of HUD funds. Bethea left the Dekalb County Housing Authority for personal and health reasons and as a career decision. Truman did not know about the federal investigation or why Bethea resigned when hiring Bethea.

### 6. Litigation

Truman never demoted or disciplined Davis. On September 21, 2012, Davis filed a charge with the Equal Employment Opportunity Commission alleging age, gender, and retaliation discrimination. The EEOC charge alleges that the discrimination occurred from July 2, 2012 to September 20, 2012.

Davis filed his complaint on November 13, 2013 alleging HABD discriminated against Davis based on his age by (1) demoting him from the position of Interim Director of Leased Housing/Section 8 to Interim Associate Director of Leased Housing/Section 8 in August 2010; (2) demoting him from the position of Interim Associate Director of Leased Housing/Section 8 to Interim Leased Housing Manager on July 1, 2012; and (3) failing to promote him to the permanent position of Director of Leased Housing/Section 8 in September 2012. (Doc. 3, ¶¶ 6-7). HABD moves for summary judgment. (Doc. 16).

### B. Standard of Review

Summary judgment is an integral part of the Federal Rules of Civil Procedure. Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to

9

judgment as a matter of law. *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23.

Once the moving party meets its burden of showing the court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added).

In reviewing the evidence submitted, the court must "view the evidence presented

through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254. The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *see Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000).

Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). The nonmoving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.* The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court must grant the motion *only if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

### C.    Analysis

#### 1.    August 2010 Demotion and September 2011 Failure to Promote Claims

All of Davis's claims before March 2012 are time barred. Before filing an ADEA action in federal court, a plaintiff must file a charge of discrimination with the EEOC within 180 days of the last act of discriminatory treatment. 29 U.S.C. § 626(d)(1)(A). Davis filed his EEOC charge on September 21, 2012. Therefore, any claims for acts of discriminatory treatment before March 25, 2012 are untimely. Thus, Davis's claim that HABD demoted him from Interim Director of Leased Housing/Section 8 to Interim Associate Director of Leased Housing/Section 8

in August 2010 because of his age is time barred. Also, any potential claim by Davis that HABD failed to promote Davis to the temporary position of interim Director of Leased Housing/Section 8 in September 2011 is time barred.

### 2. July 2012 Demotion Claim

Davis abandoned his claim that HABD "demoted"[1] him from Interim Associate Director of Leased Housing/Section 8 to Interim Leased Housing Manager in July 2012. HABD offered evidence in its summary judgment brief showing no dispute of material fact and showing that Davis's evidence failed to prove essential elements of his claim. (*See* Doc. 17, 21-23). Thus, HABD met its burden to show why Davis's claim fails. *See Celotex*, 477 U.S. at 322–23. The burden then shifted to Davis "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

However, in his response brief, Davis concedes any claim regarding his alleged July 2012 demotion. (*See* Doc. 24, 14, nt. 2 ("Plaintiff Davis is only addressing the failure to promote/hire claim in his response"). Davis has shown no genuine issue of fact and conceded any argument on this employment action. *See Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 971 n. 36 (11th Cir.2008) ( "[Plaintiff] did not defend the claim on summary judgment; he thus abandoned it."); *see Road Sprinkler Fitters v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir.1994) (claims not addressed in response to summary judgment motion deemed abandoned).

Thus, the court finds that Davis abandoned his claim for his July 2012 demotion from Interim Associate Director of Leased Housing/Section 8 to Interim Leased Housing Manager.

---

[1] HABD does not consider returning Davis to his permanent position from a temporary assignment a demotion.

### 3. September 2012 Failure to Promote or Hire Claim

Davis's claim that HABD did not promote or hire him to the permanent position of Director of Leased Housing/Section 8 because of his age fails. Although Davis shows a *prima facie* case, he fails to show that HABD's legitimate non-discriminatory reason is pretext.

The ADEA makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." *Chapman v. Al Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (citing 29 U.S.C. § 623(a)(1)). A plaintiff may establish a claim of illegal age discrimination through either direct or circumstantial evidence. *See Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008). A plaintiff relying on circumstantial evidence must prove discrimination under the ADEA using the *McDonnell Douglas* burden-shifting framework. *See Chapman*, 229 F.3d at 1024. Under the *McDonnell Douglas* framework, the plaintiff must first show a *prima facie* case of discrimination and the burden then shifts to the defendant to show a legitimate non-discriminatory reason for its action.

#### a. *Prima Facie* Case

Davis has established a *prima facie* case of discrimination for HABD's failure to promote or hire Davis to the permanent position of Director of Leased Housing/Section 8. Under *McDonnell Douglas*, a plaintiff establishes a *prima facie* case of age discrimination by showing that he (1) is a member of the protected class; (2) was qualified for his position; (3) was subjected to adverse employment action; and (4) suffered from disparate treatment because of membership in the protected class. *See Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002).

First, Davis belongs to a protected class because he was 60 years old in September 2012.

Second, Davis met HABD's minimum qualifications for the position and applied for the position, making it to the second round of interviews. Third, HABD did not select Davis for the position. A failure to promote or hire is an adverse employment action. *See Giles v. BellSouth Telecomm., Inc.*, 542 Fed. App'x 756, 760 (11th Cir. 2013). Finally, HABD chose another equally qualified person, Bethea, who was not a member of Davis's protected class. Bethea was 48 in September 2012, substantially younger than Davis.

HABD argues that Davis has not shown the fourth element of his *prima facie* case because Davis does not know whether he is more qualified than Bethea as he does not know Bethea's qualifications. However, whether Davis is more qualified is irrelevant. Davis has shown his qualifications for the position and that HABD chose Bethea, a person outside his protected class, for the position instead.

HABD argues that Davis has not shown the fourth element of his *prima facie* case because Bethea is now 50 years old. Whether Bethea is now 50 years old is irrelevant. Bethea was 48 in 2012, when he was selected over Davis, and is substantially younger than Davis. *See Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1359-60 (11th Cir. 1999) (finding candidate three years younger sufficiently younger to establish *prima facie* case).

Davis has established a *prima facie* case of discrimination.

    b.    **Legitimate Non-discriminatory Reasons and Pretext**

HABD has offered a legitimate non-discriminatory reason for not promoting or hiring Davis to the permanent position of Director of Leased Housing/Section 8. Once a plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate some legitimate non-discriminatory reason for its action. *See Clark v. Coats & Clark, Inc.*, 990 F.2d

1217, 1227 (11th Cir. 1993). This burden is "exceedingly light." *Batey v. Stone*, 24 F.3d 1330, 1334 (11th Cir. 1994). Once the employer offers a legitimate nondiscriminatory reason, "the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).

HABD, through decision-maker Truman, chose Bethea because of his superior prior experience running entire housing authorities without major problems. Further, Truman chose Bethea because of his good work as interim Director of Leased Housing/Section 8 at HABD. In contrast, Truman did not select Davis because SEMAP scores of zero and employee complaints marred Davis's experience as interim Director of Leased Housing/Section 8. Davis's only other potentially comparable experience was his time in the temporary position of Associate Director of Leased Housing/Section 8, a position only created to provide Davis additional assistance to remedy the very problems he previously created while interim Director of Leased Housing/Section 8. Davis "must meet [Truman's] reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030.

Davis argues that Truman's reasons for Bethea's hiring are pretext because Davis is equally or more qualified than Bethea. However, Davis's belief about his own qualifications is irrelevant. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head."). Davis argues that the federal investigation into the Dekalb County Housing Authority's potential misuse of HUD funds while Bethea served as the Executive Director disqualifies Bethea. However, Bethea

*initiated* the federal probe after discovering potential financial irregularities. Further, Truman did not even know about the federal investigation when hiring Bethea and it did not affect her decision. Even if Truman did know about the investigation, Davis asks Truman to compare apples (*initiating* a federal investigation) and oranges (*receiving* SEMAP scores of zero and employee complaints), which Truman is not required to do. Davis's beliefs about his and Bethea's qualifications are irrelevant.

Davis also argues that the problems he faced during his time as interim Director of Leased Housing/Section 8 were inherent in the organization and not his fault. The organization did continue to have day-to-day problems during Bethea's time as interim Director of Leased Housing/Section 8, but the organization had no "major" problems. In contrast, during Davis's time as interim Director of Leased Housing/Section 8, the organization received three scores of zero from HUD and more employee complaints. Truman considered these to be major problems. Again, Davis tries to compare apples (day-to-day problems) and oranges (major problems).

Davis also argues that because Truman did not evaluate Davis's performance as interim Director of Leased Housing/Section 8, which HABD policies did not require, her negative view of his performance now is mere pretext. Although HABD does not have any negative or positive evaluations or disciplinary records related to Davis's time as interim Director of Leased Housing/Section 8, it does have three SEMAP scores of zero and several serious employee complaints. The lack of written evaluations of Davis is not sufficient to undermine Truman's legitimate non-discriminatory reason for selecting Bethea.

Finally, Davis simply has not shown that his age was the but-for reason for Truman's choice of Bethea instead of him. *See Gross*, 557 U.S. at 177. The record is exceedingly scant of

any mention of age as no discussions, comments, documents, or other evidence suggest age related to Truman's decision in any way. Further, Truman is actually *older* than Davis. Age did not play a factor and clearly was not the but-for cause of Truman's decision to hire Bethea instead of Davis.

### III.     Summary

In summary, HABD did not discriminate against Davis because of his age. All of Davis's claims except his September 2012 claim are time barred or abandoned. Further, Davis's September 2012 claim fails because HABD has shown legitimate non-discriminatory reasons for choosing Bethea for the permanent position of Director of Leased Housing/Section 8 instead of Davis. HABD, through decision-maker Truman, found Bethea to be more qualified than Davis.

Thus, the court **DENIES** HABD's motion to strike, (Doc. 27), and **GRANTS** HABD's motion for summary judgment, (Doc. 16).

**DONE** and **ORDERED** this 31st day of March, 2015.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE